IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | CRIMINAL NO. 12-239-1 |
| | : | |
| | : | |
| FRANK G. McALEESE | : | |

**O R D E R**

    **AND NOW**, this _____ day of _____, 2012, upon consideration of the Defendant's Motion to Suppress Out-of-Court and In-Court Identifications, and the government's response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**. The out-of-court identifications of the defendant as the perpetrator of the offenses alleged in the Indictment are hereby **SUPPRESSED**.

    It is further **ORDERED** that witnesses for the government are precluded from making any future in-court identifications of the defendant at trial.

                                          **BY THE COURT:**

                                          _____
                                          **THE HONORABLE MITCHELL S. GOLDBERG**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | CRIMINAL NO. 12-239-1 |
| | : | |
| | : | |
| FRANK G. McALEESE | : | |

## DEFENDANT'S MOTION TO SUPPRESS
## OUT-OF-COURT AND IN-COURT IDENTIFICATIONS

The defendant, Frank G. McAleese, by and through his attorney, James J. McHugh, Jr., Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, respectfully moves the Court to suppress the out-of-court identifications of the owners and sales employees of Lock's Philadelphia Gun Exchange. These individuals' out-of-court identifications were unnecessarily suggestive and inherently unreliable, and any future in-court identifications by these individuals would be impermissibly tainted by the suggestive and constitutionally infirm out-of-court photographic identifications. The facts and case law supporting this Motion are set forth in the accompanying Memorandum of Law, which is respectfully incorporated herein by reference.

**WHEREFORE**, for the reasons set forth above, and those set forth in the attached Memorandum of Law, as well as any that may become apparent at an evidentiary hearing or the

Court deems just, defendant Frank G. McAleese respectfully urges the Court to grant this

Motion.

                                                       Respectfully submitted,


                                               /s/ *James J. McHugh, Jr.*
                                              JAMES J. MCHUGH, JR.
                                              Assistant Federal Defender

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 12-239-1 |
| | : | |
| FRANK G. McALEESE | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO SUPPRESS
OUT-OF-COURT AND IN-COURT IDENTIFICATIONS**

Defendant, Frank G. McAleese, hereby submits this Memorandum of Law in support of his Motion to Suppress Out-of-Court and In-Court Identifications. The out-of-court photographic identification procedures utilized during the investigation of this case were unduly suggestive and led to the owners and sales employees of Lock's Philadelphia Gun Exchange making unreliable identifications. Consequently, the out-of-court photographic identifications must be suppressed. Furthermore, the taint of these unreliable and constitutionally infirm out-of-court identifications cannot be removed. Thus, any future in-court identifications by these individuals must also be suppressed.

**I.       THE FACTUAL AND PROCEDURAL HISTORY**

In a ten-count Indictment, the government charges Mr. McAleese with: providing false information to a federal firearms licensee, in violation of 18 U.S.C. § 922(a)(6) (Counts One, Five and Eight); making a false statement to a federal firearms licensee, in violation of 18 U.S.C. § 924(a)(1)(A) (Counts Two, Six and Nine); and, possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Counts Three, Four, Seven and Ten).

The charges in the Indictment stem from Mr. McAleese's alleged purchase of firearms four years earlier – in March and April, 2008. The defendant was arrested in Salem County, New Jersey on November 10, 2011, for a murder. Officers with the New Jersey State Police obtained warrants to search two cellular telephones and purportedly discovered a telephone number for "Lock's" stored within the contacts section of one of the cellular telephones. Further investigation by the detectives revealed that "Lock's" was short for Lock's Philadelphia Gun Exchange ("Lock's"), which is located at 6700 Rowland Avenue in Philadelphia, Pennsylvania.

On March 7, 2012, the officers traveled to Lock's with a *single* black and white, 8 x 10, photograph of Mr. McAleese. The officers approached a sales clerk at the front counter with the image and asked if he recognized the man (Mr. McAleese) depicted. Unable to make an identification, the sales clerk was joined by two other employees. After discussing the photograph amongst themselves, the three individuals commented that they *thought* the man in the image had been in the store before and had *possibly* purchased a gun. At this point, Virginia Lock, the co-owner of Lock's, joined the police and the employees at the counter.

Ms. Lock asked the officers to accompany her to a back office. The officers provided Ms. Lock's assistant, Jennifer Korn, with biographical information on Mr. McAleese. Ms. Korn searched Lock's database and allegedly found paperwork indicating that the defendant had purchased firearms – four years earlier – in March and April of 2008. Ms. Korn provided the officers with photocopies of the relevant ATF Form 4473s. The following day, on March 8, 2012, the officers contacted the ATF and explained what they had learned as a result of their homicide investigation and visit to Lock's Philadelphia Gun Exchange.

On April 13, 2012, Special Agent Sarah Jane Serafino with the ATF interviewed Virginia

2

Lock and J.H. Lock, the other owner of Lock's. Ms. Lock informed Agent Serafino that she recalled Mr. McAleese making firearm purchases at Lock's. Mr. Lock told Agent Serafino that he also recalled Mr. McAleese's firearm purchases. Agent Serafino showed Mr. Lock *two photographs* of Mr. McAleese. Mr. Lock stated that photograph # 2 best depicted Mr. McAleese because he only recalled Mr. McAleese with darker brown hair.

On April 24, 2012, Agent Serafino returned to Lock's to interview a sales clerk identified as D.F. D.F. informed Agent Serafino that he recalled Mr. McAleese making firearm purchases. As she had done with Mr. Lock, Agent Serafino showed D.F. *two photographs* of Mr. McAleese. Like Mr. Lock, D.F. stated that photograph # 2 best depicted Mr. McAleese.

On May 3, 2012, Agent Serafino interviewed Jerry Dewan, a sales associate at Lock's. Mr. Dewan did not recall Mr. McAleese making any firearm purchases; however, he told Agent Serafino that a photocopy of Mr. McAleese's driver's license had been obtained at the time of the firearm transactions. After reviewing the two photographs of Mr. McAleese, Mr. Dewan advised Agent Serafino that he did not recognize the individual depicted in either of the photographs. He did indicate, however, that the individual depicted in the photographs matched the individual depicted on the driver's license photograph allegedly obtained four years earlier in March 2008.

## II. THE LAW COMPELS SUPPRESSION

The Third Circuit has specifically recognized the dangers concerning eyewitness identifications and the fact that jurors rely heavily on this evidence. The Court, after noting that 64% of known wrongful convictions were based on eyewitness identifications, quoted Justice Frankfurter: "It is widely accepted by courts, psychologists and commentators that '[t]he identification of strangers is proverbially untrustworthy.'" United States v. Brownlee, 454 F.3d

3

131, 141 (3d Cir. 2006) (quoting Felix Frankfurter, The Case of Sacco and Vanzetti: A Critical Analysis for Lawyers and Laymen 30 (University Library ed., Grosset & Dunlap 1962 (1927))). Further, and most importantly for this case, the Court recognized that "jurors seldom enter a courtroom with the knowledge that eyewitness identifications are unreliable." Brownlee, 454 F.3d at 142 (quoting Rudolf Koch, Note, Process v. Outcome: The Proper Role of Corroborative Evidence in Due Process Analysis of Eyewitness Identification Testimony, 88 Cornell L. Rev. 1097, 1099 n.7 (2003)). In fact, the Court noted that "[t]o a jury there is almost *nothing more convincing* than a live human being who takes the stand, points a finger at the defendant, and says[,] 'that's the one!'" Brownlee, 454 F.3d at 142 (quoting Watkins v. Sowders, 449 U.S. 341, 352 (1982) (Brennan, J., dissenting)) (emphasis in original) (internal quotation marks omitted).

An identification procedure which is "both (1) unnecessarily suggestive and (2) creates a substantial risk of misidentification violates due process" and must be suppressed. Brownlee, 454 F.3d at 137 (citing Manson v. Braithwaite, 432 U.S. 98, 107 (1977)). "Unnecessary suggestiveness 'contains two component parts: that concerning the suggestiveness of the identification, and that concerning whether there was some good reason for the failure to resort to less suggestive procedures.'" Brownlee, 454 at 137 (quoting United States v. Stevens, 935 F.2d 1380, 1389 (3d Cir. 1991)). Unduly suggestive identification procedures "can occur in four settings: a show-up, a photo array, a line-up, and in court." Brownlee, 454 F.3d at 137-38 (citing Identifications, 34 Geo. L.J. Ann. Rev. Crim. Proc. 149, 153 n.496 (2005)).

Where the Court finds an identification procedure unduly suggestive, the Court must then proceed to a second step and evaluate whether the eyewitness identification is nevertheless reliable under the totality of the circumstances. Thomas v. Varner, 428 F.3d 491, 503 (3d Cir.

4

2005) (quoting <u>Neil v. Biggers</u>, 409 U.S. 188, 199 (1972)).  Courts determine whether an identification tainted by unduly suggestive procedures us nonetheless reliable based on:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and confrontation.

<u>Brownlee</u>, 454 F.3d at 139 (citing <u>Biggers</u>, 409 U.S. at 199).

Here, there were two impermissibly suggestive identification procedures utilized by law enforcement: the showing of a *single*, *large 8 x 10*, photograph of defendant to Ms. Lock and several of her employees on March 7, 2012; and the showing of *two large photographs* depicting only defendant to Mr. Lock, D.F. and Mr. Dewan in April and May of 2012.  Furthermore, in March 2012, neither Ms. Lock nor her employees initially recalled or recognized Mr. McAleese as someone who had been to Lock's in the past or as someone who had purchased a firearm.  Only after they discussed the photograph collectively as a group did they decide as a group that they thought maybe he did purchase firearms.

Then, in April and May 2012, after being shown not one but two large photographs of the defendant – and no one else – both Mr. Lock and D.F. definitively recalled Mr. McAleese purchasing firearms at Locks over four years earlier and identified the defendant.  These highly unusual and extremely suggestive identification procedures rendered Mr. McAleese a virtual "bulls eye" and directly led to unreliable identifications by these individuals.  Consequently, the out-of-court identifications, as well as any future in-court identifications by these individuals, must be suppressed.

5

### A. The Out-of-Court Identifications must Be Suppressed Because the Highly Unusual Procedures Utilized Were Impermissibly Suggestive

The Supreme Court has explicitly stated that "identification arising from single-photograph displays may be viewed in general with suspicion." Braithwaite, 432 U.S. at 116 (citing Simmons v. United States, 390 U.S. 377, 383 (1968)); see also United States v. Hart, 2008 WL 1900145, at * 8 (E.D. Pa. April 2008) (citations omitted). Here, on March 7, 2012, Ms. Lock and several of her sales employees were shown a single, large, black and white photograph of Mr. McAleese. None of the witnesses *independently* recognized or recalled Mr. McAleese. However, after speaking amongst themselves, the sales employees commented that they *thought* the man in the photo had been in the store before and that he had *possibly* purchased a firearm. Moreover, it was only after Ms. Lock had her assistant search Lock's computer database with biographical information provided by the detectives, that she was able to recall with certainty that Mr. McAleese was the man depicted in the photocopied image and that he had purchased firearms from her business in the past.

Without a doubt, this method of obtaining an identification was incredibly and impermissibly suggestive. See Brownlee, 454 F.3d at 137 (noting the first component part is the suggestiveness of the procedure itself). First, only the defendant's photograph was shown, Ms. Lock and the employees were not shown any other images of other individuals. See id. at 138 ("no 'suspect' save Brownlee was presented to any of the eyewitnesses at any time"); see also United States v. Maloney, 513 F.3d 350, 355 (3d Cir. 2008) (after a police officer observed a suspicious red Mercedes, he returned to the police station and obtained official photos of the vehicle's registered owner, and the Third Circuit indicated that "[w]e cannot quarrel with

6

Maloney's argument that [the officer's] identification of Maloney followed a suggestive procedure."). The fact that only Mr. McAleese's image was presented by law enforcement for identification would automatically cause any reasonable person to infer this person did something wrong.

In addition, there is no good reason why police detectives failed to utilize less suggestive procedures, such as a properly-composed photo array or a line-up. Brownlee, 454 F.3d at 137, 138 (quoting United States v. Sebetich, 776 F.2d 412, 420 (3d Cir. 1985) ("stating that a line-up or similar procedure should 'be employed whenever necessary to ensure the accuracy and reliability of identifications'"). Some courts have noted that "[t]he necessity of law enforcement to zero in quickly on a suspect in a crime can justify the usually suggestive methodology of presenting one single photograph to potential witnesses." United States v. Welch, No. 05-681-1, 2007 WL 119954, at *3 (E.D. Pa. Jan. 9, 2007) (citing United States v. Milhollan, 599 F.2d 518, 523 (3d Cir. 1979)). But the detectives in this case were not attempting to "zero in" on any particular suspect when they showed Ms. Locks and her sales employees the photocopied image on March 7, 2012. Indeed, Mr. McAleese was arrested on November 10, 2011 and was in custody at the time of these photographic show ups. The officers clearly had ample time to construct a proper photo array or line-up so Ms. Lock and her sales employees could attempt to identify Mr. McAleese under less suggestive procedures.

Even worse was the procedures utilized when Mr. Lock and D.F. made identifications of Mr. McAleese from *two photographs* of defendant in April of 2012. Clearly, Mr. Lock's and D.F.'s identifications were not based upon their independent recollections of seeing Mr. McAleese some four year earlier. Rather, their identifications, like Mr. Dewan's in May 2012,

7

were based upon the absolutely suggestiveness of showing not one but two large photographs of the defendant – and not a single photograph of anybody else.  When Mr. Dewan was shown two photographs depicting Mr. McAleese, he was unable to independently recall or recognize the individual depicted in the photographs.  However, Mr. Dewan indicated that the individual depicted in the photographs matched the individual depicted in the photocopy of a driver's license obtained on March 21, 2008.  Despite not having seen Mr. McAleese in at least four years, both Mr. Lock and D.F. definitively identified the individual depicted in the second photograph as Mr. McAleese.

In addition, the array was impermissibly suggestive because it contained not one but two photographs of Mr. McAleese – and no one else.  See United States v. Wiseman, 172 F.3d 1196, 1209 (10th Cir. 1999) (observing that "using as few as six photos in an array, while not *per se* a due process violation, is a factor affecting the weight we give the irregularities in the array").  Accordingly, the two photographs shown to Mr. Lock, D.F. and Mr. Dewan by Agent Serafino was incredibly suggestive because the circumstances dictated who they should select.  See United States v. Lawrence, 349 F.3d 109, 115 (3d Cir. 2003) (citing Simmons, 390 U.S. at 383).  Indeed, the two photos were shown to Mr. Lock and D.F. a month after a single photocopied image depicting Mr. McAleese had been shown to Ms. Lock and several sales employees on March 7, 2012.  The two photos were then presented to Mr. Dewan in May 2012.

For all of these reasons, the out-of-court identification procedures employed in this case, under the totality of the circumstances, were unnecessarily suggestive.  The procedures employed by the officers from New Jersey and Agent Serafino violated due process.  Accordingly, the Court should suppress all of the out-of-court identifications.

**B. The Out-of-Court Identifications must Be Suppressed Because the Highly Unusual Procedures Utilized Were Impermissibly Suggestive Rendering the Identifications Unreliable**

As noted above, once the Court finds that the identification procedures employed by law enforcement were unduly suggestive, the second step in the due process analysis is to determine whether the identification is unreliable. Varner, 428 F.3d at 503 (quoting Biggers, 409 U.S. at 199). The factors utilized in this analysis are as follows: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witnesses at the confrontation; and (5) the length of time between the crime and confrontation. Brownlee, 454 F.3d at 139 (citing Biggers, 409 U.S. at 199). All of the applicable factors weigh in favor of suppression of Ms. Lock's, Mr. Lock's and the sales employees' out-of-court identifications. Application of these factors to the this establishes beyond all doubt that the identifications are unreliable.

Under the first Biggers factor, the owners and sales employees of Lock's Philadelphia Gun Exchange had not had an opportunity to view Mr. McAleese since 2008, the last year in which he allegedly purchased firearms from Lock's. This would certainly impact the reliability of these individuals' identifications.

In analyzing the second Biggers factor, the degree of these individuals' attention in 2008 was likely minimal. The employees were not victims of a crime and had no reason to scrutinize the purchaser during these routine sales. These firearms transactions were nothing more than run of the mill transactions that these employees conducted on a routine and frequent basis. These civilian employees had probably engaged in hundreds if not thousands of exactly the same type

9

of transactions both before and after the alleged transactions with the defendant.

The third <u>Biggers</u> factor simply does not apply to this case. Ms. Lock, Mr. Lock and their sales employees gave no description of Mr. McAleese prior to their identifications at the gun store.

The fourth <u>Biggers</u> factor also supports unreliability because none of the civilian witnesses could independently recall or identify Mr. McAleese. Some had to discuss the photograph amongst themselves before they could even make a possible identification. Ms. Lock had to consult her business' database to refresh her memory; whereas her sales employees – even after speaking amongst themselves – were still unable to say with certainty that Mr. McAleese had visited the store in the past and purchased a firearm. Likewise, Mr. Lock's and D.F.'s identifications were obtained after viewing not one but two large photographs of defendant – and no one else.

Finally, in analyzing the fifth <u>Biggers</u> factor, the length of time between the firearm purchases and the identifications was unreasonable and distracted from the overall reliability of the identifications. Almost four years elapsed between the purchases and all of the identifications. Clearly this factor weighs heavily in favor of unreliability.

The admission of these identifications at trial would violate defendant's due process rights, and suppression is warranted.

**C.** **Any Future In-Court Identifications Must Also Be Suppressed**

Ms. Lock, Mr. Lock, D.F., Mr. Dewan, and the other employees working at Lock's on March 7, 2012, should be precluded from testifying about their out-of-court identifications as well as making in-court identifications of Mr. McAleese during trial because the procedures used

were unduly suggestive and their identifications were unreliable. The taint of those suggestive out-of-court identifications cannot be removed.

The Third Circuit has explained that "[t]he standard for admitting evidence of pretrial identification is the same as the standard for permitting an in-court identification in the wake of a pre-trial identification." United States v. Clausen, 328 F.3d 708, 713 (3d Cir. 2003). Such eyewitness testimony is not permitted if "the pretrial identification procedure was so unnecessarily suggestive as to give to a substantial likelihood of irreparable misidentification that admitting the identification testimony would be a denial of due process." Id. (citing United States v. Mathis, 264 F.3d 321, 330 (3d Cir. 2001) (additional citation omitted). And, as noted above, the Court must determine first whether the procedures were suggestive, and second, whether the identification is nevertheless reliable despite the suggestive procedures. Brownlee, 454 F.3d at 137 (citing Braithwaite, 432 U.S. at 107); Varner, 428 F.3d at 503 (quoting Biggers, 409 U.S. at 199).

Here, the pretrial identification procedures used to obtain Ms. Lock's, Mr. Lock's, and their sales employees' identifications were impermissibly suggestive for all the reasons set forth above. And the suggestiveness would only be exacerbated at trial. As the Third Circuit noted in United States v. Emanuele, in-court observations are unnecessarily suggestive, where, as here, the defendant is clearly identified by his clothing, restraint, or other circumstances where is somehow "singled out." 51 F.3d 1123, 1130 (3d Cir. 1995); see also Brownlee, 454 F.3d at 139. While Mr. McAleese may not be in restraints or prison garb at the time of trial, he will be seated next to defense counsel as the accused. The owners of Lock's and their employees will enter the courtroom, knowing they already identified Mr. McAleese, and see him seated at counsel table as

the defendant. The taint of their earlier identifications coupled with their knowledge that Mr. McAleese is the defendant will inevitably cause them to identify Mr. McAleese. Such identifications would result not from their independent recollections, but rather based on their prior viewing of the oversized photograph's of the defendant – and no one else.

Furthermore, it is undeniable that the witnesses – who all work together – will have discussed collectively the identification of the defendant before making any identification. Therefore, they would certainly base any in-court identification on their knowledge that Mr. McAleese has already been identified "collectively" by their colleagues. See Emanuele, 51 F.3d at 1131 (the viewing of the defendant under highly suggestive circumstances was "bolstered by the comments of another witness," and thus any in-court identification would be unreliable).

The suggestiveness and unreliability of the civilian witnesses' pre-trial identifications, combined with the passage of time, Mr. McAleese's position at counsel table as the defendant at trial, and the likelihood that the witnesses have all influenced each other's opinions, all militate heavily in favor of suppression of any future in-court identifications in this case. The government should therefore be precluded from eliciting in-court identifications from the witnesses.

## III. CONCLUSION

The defense respectfully requests that the Court suppress the out-of-court and in-court identifications of the defendant by the owners and sales employees of Lock's

Philadelphia Gun Exchange.

Respectfully submitted,


 /s/ *James J. McHugh, Jr.*
JAMES J. MCHUGH, JR.
Assistant Federal Defender

**CERTIFICATE OF SERVICE**

I, James J. McHugh, Jr., Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have served a true and correct copy of Defendant's Motion to Suppress Out-of-Court and In-Court Identifications, and Memorandum of Law in Support Thereof, upon Eric B. Henson, Assistant United States Attorney, by electronic case filing and hand delivery to his law office at the United States Attorney's Office, 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106, on the date indicated below.

    /s/ *James J. McHugh, Jr.*
    JAMES J. MCHUGH, JR.
    Assistant Federal Defender

Date:   December 6, 2012