IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 12-239-01 |
| FRANK G. McALEESE<br>a/k/a "Frank George McAleese"<br>a/k/a "Frank E. MacLaine"<br>a/k/a "Frank Eastwood MacLaine" | :<br><br><br>: | |

## ORDER

AND NOW, this       day of      , 2013, upon consideration of the Defendant's Motion to Suppress Physical Evidence, and the government's response thereto, it is hereby

**ORDERED**

that the Motion is **DENIED**.

BY THE COURT:

_____
**HONORABLE MITCHELL S. GOLDBERG**
*Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 12-239-01 |
| FRANK G. McALEESE<br>a/k/a "Frank George McAleese"<br>a/k/a "Frank E. MacLaine"<br>a/k/a "Frank Eastwood MacLaine" | :<br><br><br>: | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## MOTION TO SUPPRESS PHYSICAL EVIDENCE

The United States of America, by Zane David Memeger, United States Attorney for the District, and Eric B. Henson, Assistant United States Attorney, respectfully requests that the Court deny defendant Frank G. McAleese's motion to suppress physical evidence for the reasons set forth below.

I.  Introduction

The defendant Frank G. McAleese, a convicted murderer, is charged by indictment with three counts of providing false information to a federal firearms licensee, in violation of 18 U.S.C. § 922(a)(6); three counts of making a false statement to a federal firearms licensee, in violation of 18 U.S.C. § 924(a)(1); and four counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). These charges arise from McAleese's sales and purchases of handguns at a Philadelphia gunshop, transactions that are regulated under federal law and records of which are required by law to be maintained by the gunshop. McAleese seeks suppression of a stored cell phone record of the gunshop's phone number found on McAleese's phone and firearms transaction records found in McAleese's New Jersey residence – all was

1

seized under search warrants issued in a New Jersey murder investigation of McAleese. McAleese also seeks suppression of the evidence developed at the gunshop after the transactions came to light in the murder investigation. McAleese claims that the search warrants lacked probable cause and were overbroad and that all evidence derived from the warrants must therefore be suppressed from evidence.

The Court should deny the motion because the New Jersey search warrants were valid and were obtained and executed in good faith, and therefore any defect in the warrants would not justify the extreme remedy of suppressing McAleese's cell phone and firearms transaction records, much less the gunshop's records and its employees' recollections of McAleese's firearms transactions.

II. <u>Argument</u>

A. <u>Factual Background</u>

At about 11:15 p.m. on November 9, 2011, McAleese, who was known Frank Maclaine, brought the bloodied, lifeless body of Carole Brown to the Salem County, New Jersey Hospital where she was pronounced dead at about 11:25 p.m. from bludgeoning wounds to her head. New Jersey State Troopers went to the hospital where they found McAleese sitting in a wheelchair near the emergency room. McAleese claimed that he had followed Brown to a bar where, he claimed, she had gone to buy drugs and found Brown, whom he identified as his girlfriend, slumped in the passenger seat of her car and drove her to the hospital. McAleese's clothes and shoes were covered in blood, his hands were soaked in blood, and blood was spattered on his face and forehead. Brown's car belied McAleese's story and explained these blood spatters: in the passenger cabin were pools of blood, high velocity blood spatter, brain matter, and bone

fragments. McAleese was arrested during the night of November 9-10, 2011 in possession of the cell phone at issue in the motion to suppress. He was detained in lieu of bail.

The ensuing New Jersey State Police investigation turned up evidence of McAleese's relationship with Brown. McAleese's car had been left haphazardly parked and outside Brown's residence. His car had recent front-end damage. Within an hour before Brown's murder a neighbor had heard and saw Brown at Brown's car uncharacteristically raising her voice toward a man the neighbor assumed was McAleese. Shortly after this sharp exchange the neighbor saw that Brown's car was gone but McAleese's remained. Brown's former husband confirmed a longstanding relationship of Brown to McAleese. He said that Brown had complained that McAleese was stalking her and she was afraid of him. The former husband believed that Brown was resisting McAleese's efforts to resume his relationship with her.

Based on this initial investigation, New Jersey State Police Detective II David Quinn obtained from Judge Samuel D. Natal of the Superior Court, assigned to Salem County, a warrant to search both Brown's and McAleese's cell phones for incoming and outgoing telephone calls and contact lists, among other things. This information was clearly relevant and necessary to investigate McAleese's contacts with Brown and his motive to kill her; to identify potential witnesses who might shed light on the relationship, possible motives, and the murder weapon; and to follow up McAleese's patently inconsistent story and his attempt to connect Brown to a bar where McAleese claimed she had intended to buy drugs.

On November 16, 2011, McAleese had his first court appearance before Judge Timothy G. Farrell of the Superior Court of New Jersey, assigned to Salem County. On the following day, Detective Quinn obtained from Judge Farrell a warrant to search McAleese's home for evidence

of the murder with which he was now charged, of his ongoing relationship with the deceased victim, and of any plan to kill her or anticipation of her death. Since the previous search warrant, the investigators had discovered an additional motive for the murder; they learned that the victim's son had found in her residence a $25,000 policy of insurance on her life with McAleese as the beneficiary. To the son the victim's signature on the policy appeared to have been forged. To further investigate the developing but incomplete information in a case without eyewitnesses, a search of McAleese's residence was urgently necessary. From the search of McAleese's cell phone and his residence, the investigators discovered his relationship with the Philadelphia gunshop at which McAleese made the firearms transactions charged in this indictment. The relevance to the murder investigation of his access to firearms and perhaps other weapons that might have been available at a gunshop was apparent to the investigators.

B. Legal Background

McAleese seeks the suppression of evidence obtained from his cell phone and residence and of so-called derivative evidence maintained as required by law by a federal firearms licensee to document McAleese's firearms transactions at that regulated business. He asserts technical defects in warrants issued in a New Jersey murder investigation, principally the obviously inadvertent omission from the probable cause affidavits of the date of the heinous, infamous, and notorious crime under investigation. Especially here, the extreme nature of and constraints on the use of the exclusionary rule cannot be overemphasized.

Even when, unlike here, a search is unreasonable in violation of the Fourth Amendment, suppression may be unwarranted in light of recent Supreme Court jurisprudence. In Herring v. United States, 555 U.S. 135 (2009), the Supreme Court emphasized that "[t]he fact that a Fourth

Amendment violation occurred - i.e., that a search or arrest was unreasonable - does not necessarily mean that the exclusionary rule applies. Illinois v. Gates, 462 U.S. 213, 223 [] (1983). Indeed, exclusion 'has always been our last resort, not our first impulse,' and our precedents establish important principles that constrain application of the exclusionary rule." Id. at 140, citing Hudson v. Michigan, 547 U.S. 586, 591 (2006). See also Davis v. United States, 131 S. Ct. 2419, 2426-28 (2011) (expounding on Herring at length). The Herring Court continued: "the exclusionary rule is not an individual right and applies only where it 'result[s] in appreciable deterrence.' We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation. Instead we have focused on the efficacy of the rule in deterring Fourth Amendment violations in the future." 555 U.S. at 141 (citations omitted). The Court concluded: "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Id. at 144. Unless an officer acted deliberately, recklessly, or with gross negligence, suppression is impermissible.

As to the derivative evidence, "[t]he exclusionary rule enjoins the Government from benefitting from evidence it has unlawfully obtained; it does not reach backward to taint information that was in official hands prior to any illegality." United States v. Crews, 445 U.S. 463, 475 (1980). See also United States v. White, 326 F.3d 1135, 1140 (10th Cir. 2003). The records of the firearms transactions at issue were officially maintained before the search warrants at issue here were obtained, that is, before the putative illegality. And a defendant may not

5

suppress his identity. INS v. Lopez-Mendoza, 468 U.S. 1032 (1984); United States v. Garcia-Beltran, 443 F.3d 1126 (9th Cir. 2006); United States v. Roque-Villanueva, 175 F.3d 345 (5th Cir. 1999).

McAleese asks this Court to review the probable cause determinations and search warrants issued by two judges of the Superior Court of New Jersey. The Court does not review the issuing authorities' determinations of probable cause de novo; it exercises only a deferential review of these determinations. Illinois v. Gates, 462 U.S. at 236 ("A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' "); United States v. Whitner, 219 F.3d 289, 295-96 (3d Cir. 2000); United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993) (In evaluating a search warrant, the Court should "[k]eep[] in mind that the task of the issuing magistrate is simply to determine whether there is a fair probability that contraband or evidence of a crime will be found in a particular place" and "uphold the warrant as long as there is substantial basis for a fair probability that evidence will be found."). The issue is whether the issuing authority had a "substantial basis" for concluding that probable cause existed for the warrant. Gates, 462 U.S. at 238; Whitner, 219 F.3d at 295-96. It must be remembered that "[t]he task of the issuing magistrate is to make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. Finally, "[t]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Id.

As the Supreme Court has stated, "probable cause is a fluid concept -- turning on

the assessment of probabilities in particular factual context -- not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232. "The supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner." Id. at 230-31. "[S]tatements in an affidavit may not be read in isolation -- the affidavit must be read as a whole." Conley, 4 F.3d at 1205 (quoting United States v. Brown, 3 F.3d 673, 678 n. 5 (3d Cir. 1993)). Furthermore, "[t]he issuing judge . . . is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." United States v. Caicedo, 85 F.3d 1184, 1192 (6th Cir. 1996) (quoting United States v. Lawson, 999 F.2d 985, 987 (6th Cir.1993) (internal quotations omitted)). The Third Circuit "repeatedly ha[s] noted . . . that direct evidence linking the crime to the location to be searched is not required to support a search warrant." Whitner, 219 F.3d at 297. There is no requirement that the affidavit must "provide direct evidence that contraband would be found at the location to be searched." Whitner, 219 F.3d at 297.[1]

When a search warrant affidavit fails adequately to establish probable cause for the search, the evidence obtained through the search may still be admissible under the good faith exception to the exclusionary rule. See United States v. Leon, 468 U.S. 897 (1984). The Supreme Court has ruled that the Fourth Amendment does not bar the use of evidence "obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." Id. at 900. The good faith

---

[1] Although McAleese's prior murder conviction was not revealed in the affidavits at issue here, a defendant's prior conviction can assist in establishing probable cause specifically when "the previous arrest or conviction involves a crime of the same general nature as the one which the warrant is seeking to uncover." United States v. Conley, 4 F.3d at 1207.

exception thus instructs that suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." United States v. Hodge, 246 F.3d 301, 307 (3d Cir. 2001); United States v. Williams, 3 F.3d 69, 74 (3d Cir. 1993). The test for whether the good faith exception applies is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization." Hodge, 246 F.3d at 307; United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents ($92,427.57), 307 F.3d 137, 145 (3d Cir. 2002). The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception. Leon, 468 U.S. at 922 ("searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, . . . for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search."); $92,427.57, 307 F.3d at 146.

C. The Search Warrants Were Properly Issued.

1. Judge Natal's November 15, 2011 warrant to search cell phones was valid.

The first warrant at issue was issued by Superior Court Judge Samuel D. Natal on November 15, 2011. The affidavit of probable cause prepared by Detective David Quinn informed that judge that Carol Brown had been bludgeoned to death in her car into which her assailant's blunt force blows had projected parts of her brain, bone fragments, and high velocity blood spatter. McAleese, who admitted having driven the victim's dead or dying body to the hospital in her car, was blood soaked and had blood spatter on his face and forehead. This evidence was inconsistent with his claim to have found her after the deadly assault slumped in the passenger seat of the car. About an hour before McAleese took Brown or her body to the

8

hospital, his car was seen haphazardly parked with recent front-end damage outside Brown's residence just after a neighbor overheard Brown raise her voice toward someone the neighbor assumed was McAleese. Only minutes after this exchange Brown's car had been removed from outside her residence, but McAleese's remained. Brown's former husband reported that McAleese had a longstanding relationship with Brown and that Brown had complained that McAleese was stalking her and she was afraid of him. The former husband believed that Brown was resisting McAleese's attempt to resume his relationship with her. In Brown's car, police had found not only the gruesome evidence of her slaying but her cell phone. When arrested, McAleese also had a cell phone.

      Based on this ample information, Judge Natal must have been compelled to conclude that McAleese was Brown's probable, if not certain, killer. He must also have concluded that information vital to the murder investigation would be found on their cell phones. For it had been reliably asserted that they had a relationship that may have motivated the killing. Brown, who feared McAleese, had argued with him shortly before her murder. McAleese had made exculpatory claims which required investigation: supposed drug use and an intended drug transaction by Brown. No eyewitnesses were identified in the affidavit of probable cause so that the murder investigation would hinge on circumstantial evidence, including evidence of the relationship of Brown and McAleese and a possible motive or motives for the murder. No murder weapon was identified in the affidavit so that an investigation of McAleese's access to weapons was essential. All of these investigative necessities hinged on information about any contacts between Brown and McAleese and each of them with third persons near the time of the murder and on identifying longstanding friends and acquaintances of Brown and McAleese who

might have knowledge to further the investigation. The judge therefore issued the warrant to search both cell phones for anything of potential investigative value. Nothing on either phone could be assumed in advance to be of no evidentiary value in the murder investigation.

McAleese complains that the warrant was stale because the date of Brown's murder was omitted from the probable cause affidavit. There are two difficulties with this argument. First, the cell phone information about any calls made by either Brown or McAleese or both shortly before the murder would be intact, and the identities of friends, acquaintances, and others, who could be expected to shed light on McAleese and Brown's relationship would not go stale. The phones were each taken into police custody shortly after the murder, and the information to be searched for was intact as of that time. The omission of the date of the murder is irrelevant and immaterial to these considerations. Second, the affidavit must also be read in its entirety and in the light of common sense. It is clear from the affidavit that the murder investigation is of recent origin and ongoing and that the information sought is not of the kind whose relevance and necessity to the investigation dissipates over time.

Nor was the warrant overly broad. The warrant permitted a "thorough and diligent" search of the cell phones to "disclose [what] will be seized" as "evidence or information tending to establish the [murder under investigation]." Defense Motion Exhibit B at p. 3 of 10. This was not a "general" warrant merely because it described a category of items to be seized; a warrant will satisfy the Fourth Amendment's particularity requirement though it describes in inclusive, generic terms what is to be seized, provided it does not vest officers with unbridled discretion to search and seize whatever they wish. See $92,422.57, 307 F.3d at 149; cf. Groh v. Ramirez, 540 U. S. 551, 557-58 (2004) (condemning warrants that authorize a general, exploratory rummaging

through a person's belongings.). In the context of the investigation it aided, the warrant permitted no purposeless rummaging through the phones. Rather, its scope was limited to the specific evidence and information sought, broad but not limitless categories. Information was to be seized not to satisfy idle curiosity or prurient interest but to advance a homicide investigation which, of necessity, had to be broad in scope. The potential usefulness of information to advance a criminal investigation is precisely the sort of judgment that we depend on law enforcement officers to make and limiting the detectives investigating the Brown murder to that goal as appropriate, and no more specific limitation could have been formulated in advance consistent with the exigencies of such investigations. The Fourth Amendment requires reasonable limitations, not the stifling of investigators.

For example, McAleese's phone included his contact with a Philadelphia gunshop. Checking with the gunshop about McAleese's access to firearms and other weapons capable of inflicting the fatal blunt force injuries was exigent, if not absolutely necessary. See, e.g., United States v. Horn, 187 F.3d 781, 788 (8th Cir. 1999) (upholding against a particularity challenge a warrant to search for "[r]ecords, documents, receipts, keys, or other objects showing access to, and control of, the residence"). Here, the detectives were clearly limited to evidence and information potentially linking McAleese to the commission of a certain crime. The warrant authorized the seizure only of items tying a specific person, McAleese, to a specific crime, the Brown murder. By seizing the information that McAleese included in his contact information on his cell phone, the detectives did not exceed the scope of the warrant as specified therein.

### 2. Judge Farrell's November 17, 2011 warrant to search McAleese's residence was valid.

On November 17, 2011, the day after McAleese had his initial appearance before Superior Court Judge Timothy G. Farrell, Detective Quinn took a search warrant application to Judge Farrell seeking permission to search McAleese's residence for evidence connecting him to the Brown murder. The application requested permission to search the residence for evidence relevant to the murder investigation and to seize "items which at the time of their discovery are reasonably believed to be evidential or relevant to the [murder] investigation." Defense Exhibit A at p. 3 of 13. Detective Quinn repeated for Judge Farrell's review the information previously submitted to Judge Natal which, with the addition only of McAleese's established residence, would have justified the search requested. McAleese had given his address during an interview after which he was charged, as Detective Quinn said in his probable cause affidavit. But the investigators had received the additional information that Brown had a $25,000 policy of insurance on her life with McAleese as the beneficiary and that Brown's signature on the policy appeared to have been forged. This striking motive evidence showed compellingly the likelihood that pertinent information about McAleese's relationship with Brown and motive or motives to kill her would be found at McAleese's residence where also the types of information expected to be found on his phone would likely be found.

McAleese again complains that because the date of the murder is not given in the affidavit the warrant was stale. To common sense, however, consulting a calendar is not the only way to tell that a writer is referring to recent events, and this probable cause affidavit, like the earlier one, makes plain in a common sense reading that this is an ongoing, active investigation of a recent murder, not a cold case revived. It is equally patently clear from the affidavit that the

evidence and information sought from McAleese's residence will not have lost its relevance to the investigation or have disappeared. The supposed staleness problem derives entirely from an over-constrained and tendentious reading of the affidavit. Judge Farrell did not slip up when he issued the warrant without having the obviously inadvertent omission corrected. An attentive reader would have been as likely as the writer not to notice the immaterial omission. There was no facial deficiency in the affidavit despite the typographical omission. Had the judge noticed the omission, it would have been reasonable to have requested the date of the murder. The Fourth Amendment, however, did not require attention to an immaterial detail nor correction of the immaterial omission if noticed. The warrant was perfectly sound when considered in light of the appropriate standards required by law.

### 3. The detective acted in good faith reliance on the judges' warrants.

The outcome of McAleese's case would be no different even if the warrants were invalid - which they are not - because, under the good faith exception to the exclusionary rule, the detectives executing the warrant reasonably relied on the issuing authorities' authorizations. Leon, 468 U.S. at 922-923. "In the ordinary case," executing officers "cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." Id. at 921. Indeed, they are expected to disregard the magistrate's authorization only in the most exceptional of circumstances -- for example, when a "warrant [is] based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," id. at 923 (internal quotation marks omitted), or when a warrant is "so facially defective * * * in failing to particularize * * * the things to be seized [] that the executing officers cannot reasonably presume it to be valid." Ibid.

Neither scenario is present here. The affidavits contained a detailed account of probable cause to believe that McAleese had murdered Brown and accounts of why it was reasonable to believe that evidence and information pertinent, if not absolutely necessary, to the murder investigation would be found on the phone and in the residence. Nor was the warrant "so facially defective" in describing what should be seized that the detectives could not "reasonably presume it to be valid." Ibid. On the contrary, the warrant was a garden-variety authorization by the courts for the recovery of a wide range of information essential to homicide investigations, and the warrants each guided the detectives' execution of the warrants to the collection of evidence and information pertinent to the murder investigation, professional judgments law enforcement agents are expected to be trained and able to make. The detectives were not given unconstrained or overbroad discretion to randomly rummage through McAleese's phone or home. Such warrants are routinely issued daily across the United States, and they are as routinely and properly upheld by trial and appellate courts. This was certainly not a case where "even a cursory reading of the warrant * * * would have revealed a glaring deficiency." Groh v. Ramirez, 540 U.S. at 564. McAleese has articulated no basis for suppressing the evidence because the warrants were stale or insufficiently particularized the items to be seized.

### 4. The derivative gunshop evidence and the defendant's identity may not be suppressed.

Even if the immediate fruits of the New Jersey searches were suppressible, which they are not, the evidence from the gunshop of McAleese's illegal firearms transactions and identity would not be suppressible. As the Third Circuit has explained, "the exclusionary rule should only be applied when . . . police conduct is 'deliberate, reckless, or grossly negligent,' or when it will deter 'recurring or systemic negligence.'" United States v. Tracey, 597 F.3d 140, 151 (3d

Cir. 2010) (quoting Herring v. United States, 555 U.S. 135, 144 (2009)). Because "isolated negligent acts on the part of the police do not warrant" letting "'guilty and possibly dangerous defendants go free,'" the exclusionary rule should not be applied in this case. Tracey, 597 F.3d at 151 (quoting Herring, 555 U.S. at 141). Here there was no arguably deliberate, reckless, or grossly negligent misconduct nor any recurring or systemic negligence that might warrant the extreme remedy of suppression of the information and evidence seized from McAleese's cell phone and home.[2] Certainly nothing in the collection of this information could justify

---

[2] Because of the mandate that a court consider the enormous cost of enforcement of the exclusionary rule, Herring explained, any application of the rule must result in "appreciable" and "significant" deterrence, not just "marginal" or "incremental" deterrence. Id. at 141-42 (citations omitted). The Court therefore concluded that only "flagrant" misconduct warrants suppression.

> The extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct. As we said in Leon, "an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus" of applying the exclusionary rule. 468 U.S., at 911 []. Similarly, in [Illinois v. ]Krull, [480 U.S. 340] (1987), we elaborated that "evidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" 480 U.S., at 348-349 [] (quoting United States v. Peltier, 422 U.S. 531, 542 [] (1975)).

Herring, 555 U.S. at 143. The Supreme Court concluded:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

Id. at 144. Stated differently, "our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances." Id. at 145, quoting Leon, 468 U.S. at 922 n.23.

In this case, the detective did not act flagrantly to violate the Constitution, and certainly without any knowledge that his conduct was wrongful in any way. His judgment was the same as two Superior Court judges. The benefits of applying the exclusionary rule in this situation,

suppressing records of a federal firearms licensee and its employees' recollections of the transactions.

It would be anomalous to extend McAleese's Fourth Amendment rights to this evidence over which he has no privacy interest. The transactions in which he engaged were in no way private but perfectly public, they were regulated by federal law, and the gunshop was required by law to maintain the records of these transactions. No deterrent purpose of the exclusionary rule could justify the suppression of this evidence. McAleese may not suppress these records. See Crews, 445 U.S. at 475; White, 326 F.3d at 1140. Nor may he suppress his identity. INS v. Lopez-Mendoza, 468 U.S. 1032 (1984); United States v. Garcia-Beltran, 443 F.3d 1126 (9th Cir. 2006); United States v. Roque-Villanueva, 175 F.3d 345 (5th Cir. 1999). The derivative evidence that is mentioned in the suppression motion is simply not suppressible.

III. CONCLUSION

The Court should deny defendant's motion to suppress physical evidence.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

KATHY A. STARK
Chief, Violent Crime and Firearms Section

ERIC B. HENSON
Assistant United States Attorney

---

Herring held, cannot justify its cost.

## CERTIFICATE OF SERVICE

I certify that on this day I caused a copy of the Government's Response to Defendant's Motion to Suppress Physical Evidence to be served by electronic filing to:

> James J. McHugh, Jr., Esquire
> Defender Association, Federal Division

*[signature]*

ERIC B. HENSON
Assistant United States Attorney

Date: January 4, 2013