# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 12-239-1 |
| | : | |
| FRANK G. MCALEESE | : | |

## DEFENDANT'S SUPPLEMENT TO
## DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE

On November 21, 2012, the defense filed a Motion to Suppress Physical Evidence. On December 28, 2012, three additional search warrants were provided to the defense. As a result, the defendant, Frank G. McAleese, now respectfully supplements the Motion to Suppress Physical Evidence and specifically moves this Court to suppress a cellular telephone seized during the search of defendant's 2005 Ford Taurus.

**I.    THE FACTS**

Prior to the application for and receipt of a search warrant, the police seized the defendant's vehicle, a 2005 Ford Taurus, in Woodstown, New Jersey and transported it approximately 22 miles to the New Jersey State Police Troop "A" Headquarters in Williamstown, New Jersey. Sometime thereafter, the police applied for a search warrant to search the vehicle. This warrant was approved at 10:14 am on November 10, 2011. The affiant for the warrant was Detective Francis McGovern, Jr. of the New Jersey State Police. A search of the vehicle resulted in the seizure of a Samsung Cricket cellular telephone.[1] It is the defense

---

[1] A separate warrant was obtained to search this cellular telephone. The search warrant for the search of this cellular telephone is the subject of defendant's original motion to suppress.

position, in this Supplement, that the search warrant for defendant's vehicle was invalid and the Samsung Cricket cellular telephone must be suppressed.

The following facts were contained in the Application for Search Warrant[2] for the search of the 2005 Ford Taurus owned by the defendant, Frank McAleese: Mr. McAleese informed the police that he was visiting with the decedent, Carole A. Brown, at her apartment. At some point she drove to the "Corner Bar" in Woodstown to buy drugs. When she did not return after an hour, Mr. McAleese then walked to the bar and observed the decedent slumped over in the passenger seat of her vehicle – a 2006 Hyundai Tucson. Mr. McAleese drove the decedent in her vehicle to the emergency room of the Salem County Hospital. The decedent had severe blunt force trauma to the back side of her head.

An officer observed evidence of an assault inside Ms. Brown's vehicle – the 2006 Hyundai. Specifically, he observed: "pools of blood, high velocity blood spatter, brain matter, and bone fragments." inside this vehicle. The defendant's clothes were covered in blood, his hands were blood soaked, and blood spatter was observed on his face and forehead. He was extremely intoxicated and not suitable for an interview.

An officer observed Mr. McAleese's vehicle – a 2005 Ford Taurus – parked haphazardly in a parking stall in front of Ms. Brown's apartment. The vehicle had impact damage that appeared to be recent to the lower portion of the vehicle's passenger door.

---

The search of this cellular telephone led to the recovery of a telephone number for Lock's Philadelphia Gun Exchange in Philadelphia, Pennsylvania. As a result of learning this information, a search warrant was sought and issued to search Mr. McAleese's residence at 615 East Main Street, Apartment C-21 in Maple Shade, New Jersey. The search of the residence resulted in the seizure of receipts for the purchase of the firearms that are the subject of this case.

[2] See Exhibit "A" attached hereto.

During a neighborhood canvas, police learned that the decedent and defendant were long time good friends. A neighbor of the decedent recalled hearing the decedent talking loud at the rear of her vehicle which was uncharacteristic of her. The neighbor then looked outside and noticed the decedent's vehicle (2006 Hyundai) was no longer there. The defendant's vehicle (2005 Taurus) was there.

The affiant also averred that he spoke with the decedent's ex-husband. The ex-husband informed the affiant that he had been divorced from the decedent for 25 years, they remain in sporadic contact, and he had last spoken to her one month ago. He states that the decedent had a relationship with a guy named Frank intermittently over that last 20 years. He agreed Franks last name was Maclaine when it was offered to him by the affiant. Finally, he stated that the decedent had complained in the past that Frank was stalking her and she was afraid of him. He believed Frank was attempting to reignite the relationship but the decedent was not interested.

For all of the following reasons, the cellular telephone seized from defendant's 2005 Ford Taurus must be suppressed because the vehicle was illegally seized. It also must be suppressed because the facts averred in the Application for Search Warrant were insufficient to establish probable cause to believe the vehicle contained contraband related to murder or any other offenses and to support an anytime search.

## II. DISCUSSION

### A. The Warrantless Seizure Of Mr. McAleese's Vehicle Was Unlawful

It is well established that the towing and impoundment of a vehicle is a seizure under the Fourth Amendment. United States v. Smith, 790 F.2d 789, 792 (9th Cir. 1986). Thus, in order to pass Fourth Amendment scrutiny, "[a]n impoundment must either be supported by probable

3

cause, or be consistent with the police role as 'caretaker' of the streets and completely unrelated to an ongoing criminal investigation." United States v. Duguay, 93 F.3d 346, 352 (7th Cir. 1996) (citing South Dakota v. Opperman, 428 U.S. 364, 370 n.5 (1976)). The "decision to impound (the 'seizure') is properly analyzed as distinct from the decision to inventory (the 'search')." Id. at 351. And, like the circumstances in which police may conduct a search, the circumstances in which a vehicle may be impounded must also adhere to standardized criteria or established routine. See id. (quoting Florida v. Wells, 495 U.S. 1, 4 (1990)). However, the existence of a police policy does not render a particular search or seizure reasonable or otherwise immune from scrutiny under the Fourth Amendment. See Sibron v. New York, 392 U.S. 40, 61 (1968).

Under New Jersey law, impoundment of an automobile without probable cause or a warrant is constitutionally permissible only "'upon a factual showing of substantial police need.'" State v. Ercolano, 79 N.J. 25, 33-34, 397 A.2d 1062 (1979) (quoting State v. Slockbower, 79 N.J. 1, 8, 397 A.2d 1050, 1053 (1979)). When "the circumstances that bring a vehicle properly to the attention of the police are such that its driver, even though arrested, is able to make his own arrangements for its custody, or if the vehicle can be conveniently parked and locked without constituting an obstruction of traffic or other public danger, the police should permit that action to be taken rather than impound it against the will of the driver. . . ." Id. at 34 (quoting Slockbower, 397 A.2 at 1053-54). If the police do not have a realistic need to impound the vehicle, then the impoundment is unreasonable. State v. Bruzzese, 94 N.J. 210, 225, 463 A.2d 320, 328 (1983).

When applying the foregoing legal principles to the facts here, the seizure of Mr. McAleese's Ford Taurus by the police was unreasonable under both the Fourth Amendment of

4

the United States Constitution and Article 1, paragraph 7 of the New Jersey State Constitution (1947).[3] As discussed in Section B of this Supplement, there was no probable cause or exigent circumstances to proceed with the warrantless seizure of Mr. McAleese's vehicle. There also was/is no evidence suggesting that Mr. McAleese used his own car when he allegedly murdered Ms. Brown. The probable cause affidavit states that Mr. McAleese drove Ms. Brown to the hospital operating her Hyundai Tucson. (Aff. ¶ 5-A). And, the officer observed evidence of an assault in the Hyundai which was saturated with "pools of blood, high velocity blood spatter, brain matter, and bone fragments." (Aff. ¶ 5-D).

Nor was the seizure of Mr. McAleese's Ford Taurus consistent with the officers' role as "caretaker" of the streets. Duguay, supra, 93 F.3d at 352 (citing Opperman, 428 U.S. at 370 n.5). The record does not establish that the police had a realistic need to impound Mr. McAleese's vehicle. Mr. McAleese's vehicle was parked in a parking space in front of an apartment. There is no evidence that his vehicle was parked illegally or created a safety hazard or impediment to traffic or other cars. Further, there is no evidence that Mr. McAleese consented to the impoundment of his vehicle, that he did not have a valid license, that the Ford Taurus was not properly registered, or that the car had been reported stolen. Considered against the totality of the circumstances, the officers insistence on taking the vehicle into police custody was unreasonable and constituted an improper seizure. "The decision to impound an automobile is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots." Duguay, 93 F.3d at 353. Here, the vehicle

---

[3] N.J. Const. Art. 1, paragraph 7. Freedom from unreasonable searches and seizures; warrant

was not on a public street but rather it was parked in a parking space.

The action taken in this case was unreasonable and unnecessary under the circumstances. Mr. McAleese's vehicle was lawfully parked at the time of its seizure. Thus, the seizure was not authorized by New Jersey law, nor did the police have probable cause to believe that the vehicle contained evidence of or constituted an instrumentality or fruit of a crime. By subjecting the vehicle to impoundment, the police impermissibly invaded Mr. McAleese's justifiable expectations of privacy. Moreover, this seizure was not necessary to the attainment of any lawful police objective and, hence, was illegal. Since the evidence at issue here was uncovered through a search of the vehicle subsequent to this illegal seizure, that evidence must be suppressed. Wong Sun v. United States, 371 U.S. 471, 485-86 (1963).

      **B.**      **The Application for Search Warrant Lacked Probable Cause**

A search warrant may issue only if a neutral magistrate determines that there is a "'fair probability that . . . evidence of a crime will be found in a particular place.'" United States v. Zimmerman, 277 F.3d 426, 432 (3d Cir. 2002) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)); Jones v. United States, 362 U.S. 257, 271 (1960). To meet the probable cause standard, "there must, of course, be a nexus . . . between the item to be seized and criminal behavior." Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 307 (1967). To sanction a warrant without such a nexus "would be to invite general warrants authorizing searches of any property owned, rented, or otherwise used by a criminal suspect – just the type of broad warrant the Fourth Amendment was designed to foreclose." United States v. Schultz, 14 F.3d 1093, 1098 (6th Cir. 1994) (emphasis in original). When deciding whether an affidavit supporting a warrant articulates probable cause sufficient to justify a search, the reviewing court may consider only the

information presented to the magistrate – namely, the contents of the affidavit itself. See United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001).

In this case, Detective McGovern averred: Mr. McAleese informed the police that he was visiting with the decedent, Carole A. Brown, at her apartment. At some point she drove to the "Corner Bar" in Woodstown to buy drugs. When she did not return after an hour, Mr. McAleese then walked to the bar and observed the decedent slumped over in the passenger seat of her vehicle. Mr. McAleese drove the decedent in her 2006 Hyundai Tucson to the emergency room of the Salem County Hospital. The decedent had severe blunt force trauma to the back side of her head.

An officer observed evidence of an assault inside Ms. Brown's vehicle – the 2006 Hyundai. Specifically, he observed: "pools of blood, high velocity blood spatter, brain matter, and bone fragments." inside the Hyundai. The defendant's clothes were covered in blood, his hands were blood soaked, and blood spatter was observed on his face and forehead. He was extremely intoxicated and not suitable for an interview.

An officer observed Mr. McAleese's vehicle – a 2005 Ford Taurus – parked haphazardly in a parking stall in front of Ms. Brown's apartment. The vehicle had impact damage that appeared to be recent to the lower portion of the vehicle's passenger door.

During a neighborhood canvas, police learned that the decedent and defendant were long time good friends. A neighbor of the decedent recalled hearing the decedent talking loud at the rear of her vehicle which was uncharacteristic of her. The neighbor then looked outside and noticed the decedent's vehicle (2006 Hyundai) was no longer there. The defendant's vehicle (2005 Taurus) was there.

7

He also averred that he spoke with the decedent's ex-husband. The ex-husband informed the affiant that he had been divorced from the decedent for 25 years, they remain in sporadic contact, and he had last spoken to her one month ago. He states that the decedent had a relationship with a guy named Frank intermittently over that last 20 years. He agreed Franks last name was Maclaine when it was offered to him by the affiant. Finally, he stated that the decedent had complained in the past that Frank was stalking her and she was afraid of him. He believed Frank was attempting to reignite the relationship but the decedent was not interested.

From these facts and inferences, Detective McGovern concluded that there was probable cause to believe that evidence relating to murder, possession of a weapon, possession of heroin and possession of drug paraphernalia would be located in the Ford Taurus. However, there are no facts in Detective McGovern's affidavit indicating that Ms. Brown was killed anyplace besides her vehicle. There is nothing in the affidavit indicating that Ms. Brown was ever present in Mr. McAleese's vehicle at any point on the date she was murdered (when that was is anybody's guess since it's not stated anywhere in the warrant or supporting affidavit), or in the days, weeks, or months preceding her death – whenever that death was. In addition, while Detective McGovern notes in the affidavit that Mr. McAleese's vehicle had impact damage appearing to be recent, the affidavit is absent with respect to any exterior damage being observed on Ms. Brown's vehicle. Likewise, whereas evidence of the assault and murder could be observed in plain view through the windows of Ms. Brown's Hyundai, Detective McGovern's affidavit is devoid of any averments about blood spatter, brain matter or other evidence of assault and murder being seen through the windows of Mr. McAleese's Ford Taurus.

The affidavit in support of probable cause to search the Ford Taurus clearly contained

insufficient information linking Ms. Brown's murder (or drugs) to Mr. McAleese's vehicle. Given the absence of any evidence connecting the murder (or drugs) to the defendant's vehicle, as well as the absence of any temporal or proximate link on the face of the affidavit with respect to when the murder actually occurred, law enforcement officers had no reason to believe that the Ford Taurus would contain evidence relating to murder, weapon possession, heroin possession or possession of drug paraphernalia.[4]

Moreover, in this case, law enforcement officers needed a higher level of probable cause since the warrant that was requested and approved, contained a direction that it be executed at "anytime" of the day or night, as opposed to between fixed hours. Similar to a warrant to search at nighttime under federal law, an "anytime" warrant under New Jersey law requires greater proof that the property to be seized is in the place to be searched than is necessary for a daytime search. Indeed, "unless [ ] good cause [is] shown [that] the warrant provides for its execution at any time

---

[4] Of course, the defense recognizes the automobile exception to the warrant requirement. However, even the automobile exception requires probable cause to believe the vehicle contains evidence of a crime before a warrantless search is permitted. See, e.g., Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (per curiam) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more."); California v. Carney, 471 U.S. 386, 392 (1985) (police may search vehicle without a search warrant where they have probable cause to believe the vehicle contains contraband or evidence of a crime); United States v. Ortiz, — F.Supp.2d —, 2012 WL 2951391, *17 (E.D. Pa. July 20, 2012) ("Government counsel acknowledged . . . that courts apply the automobile exception to permit a warrantless search of the interior of a vehicle 'when there's probable cause to believe *a vehicle contains contraband*.' . . . (emphasis added)"). This exception is of no help to the government since the officers did not have probable cause to search the vehicle because they could not have reasonably believed it contained evidence or contraband relating to murder, weapon possession, possession of heroin and possession of drug paraphernalia. See United States v. Perez, 67 F.3d 1371, 1375-76 (9th Cir. 1995, *rev'd in part on other grounds*, 116 F.3d 840 (1997) (en banc) (automobile exception did not apply to the search of a defendant's vehicle because connection between the crime and the car was only speculative).

9

of day and night," the issuing judge must insert a direction in the warrant that it be served "within the hours fixed therein." New Jersey Rule 3:5-5. Thus, beyond the probable cause needed for every warrant, Rule 3:5-5 demands that there be "good cause" for the issuance of an "anytime" search. It is for this reason, Mr. McAleese contends, the "anytime" warrant to search his Ford Taurus is tantamount to a federal nighttime search warrant, which also requires "good cause" beyond the requisite probable cause for conducting an uncommon nighttime search. See Fed. R. Crim. P. Rule 41(e)(2)(A)(ii).

"The reason for requiring specific authorization of night searches and for the somewhat higher standard of proof for them imposed by Rule 41, [is] the peculiar abrasiveness of official intrusions at such periods. . . ." United States v. Ravich, 421 F.2d 1196 , 1201 (2d Cir. 1970). While there is no specific provision in the Fourth Amendment with respect to the time of day during which a warrant must be executed, the Amendment itself speaks in terms of protection "against unreasonable searches and seizures." Provided this, and because nighttime searches are particularly intrusive and frightening, see Coolidge v. New Hampshire, 403 U.S. 443, 477 (1971) (recognizing "the extremely serious intrusion of a midnight entry"), it is not surprising that federal courts, including the Third Circuit, have uniformly recognized that "[t]he time of a police search of an occupied family home may be a significant factor in determining whether, in a Fourth Amendment sense, the search is 'unreasonable.'" United States ex rel. Boyance v. Myers, 398 F.2d 896, 897 (3d Cir. 1968). See also United States v. Callwood, 66 F.3d 1110, 1112-13 (10th Cir. 1995) ("In conducting the Fourth Amendment inquiry, we recognize that a nighttime search is particularly intrusive."); United States v. Smith, 340 F.Supp. 1023, 1029 (D. Conn. 1972) ("The fourth amendment protects individual privacy, and intrusion into an occupied home

in the middle of the night is plainly a greater invasion of privacy than entry during the day. A knock at the door is more alarming in the middle of the night, and it is no less so because the officer knocking has a search warrant.") (citation omitted); United States v. Young, 877 F.2d 1099, 1104 (1st Cir. 1989) (reason for limiting nighttime searches is to "prevent [] abrupt intrusions on sleeping residents in the dark"); Ravich, supra, 421 F.2d at 1201 (noting "peculiar abrasiveness" of intrusions by law enforcement officials at night); but see United States v. Gibbons, 607 F.2d 1320, 1327 (10th Cir. 1979) (finding that although searched occurred at nighttime, it involved intrusion into a black trunk, instead of a home; therefore, circumstances not strong for claiming unreasonableness in nighttime search).

Although this case involves an anytime/nighttime warrant which authorized an intrusion into the interior of a vehicle, and not a home, the fact remains that the affidavit supporting the anytime/nighttime search warrant did not contain the requisite probable cause necessary for every warrant, let alone "good cause" beyond that for the issuance of an uncommon anytime/nighttime warrant. The warrant was therefore invalid.

**WHEREFORE,** for the foregoing reasons, for the reasons set forth in the defendant's original motion to suppress, and for any that unfold at an evidentiary hearing on this matter, defendant Frank G. McAleese respectfully requests that the Court grant his motions and issue an order suppressing the physical evidence in this case.

        Respectfully submitted,

        /s/ James J. McHugh, Jr.
        JAMES J. MCHUGH, JR.
        Assistant Federal Defender

**CERTIFICATE OF SERVICE**

      I, James J. McHugh, Jr., Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have served a true and correct copy of the Defendant's Supplement to Defendant's Motion to Suppress Physical Evidence, upon Eric B. Henson, Assistant United States Attorney, by electronic case filing and hand delivery to his office at the United States Attorney's Office located at 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106, on the date indicated below.

        /s/ James J. McHugh, Jr.
        JAMES J. MCHUGH, JR.
        Assistant Federal Defender

DATE:      January 18, 2013