IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. 12-239-01 |
| FRANK G. McALEESE<br>a/k/a "Frank George McAleese"<br>a/k/a "Frank E. MacLaine"<br>a/k/a "Frank Eastwood MacLaine" | :<br><br><br>: |

## O R D E R

AND NOW, this       day of       , 2013, upon consideration of the Defendant's Motion to Suppress Out-of-Court and In-Court Identifications, and the government's response thereto, it is hereby

## O R D E R E D

that the Motion is **DENIED** as to the in-court identifications and the witnesses may identify the defendant at trial.

BY THE COURT:


_____
**HONORABLE MITCHELL S. GOLDBERG**
*Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 12-239-01 |
| FRANK G. McALEESE<br>a/k/a "Frank George McAleese"<br>a/k/a "Frank E. MacLaine"<br>a/k/a "Frank Eastwood MacLaine" | :<br><br><br>: | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO OUT-OF-COURT and IN-COURT IDENTIFICATIONS

The United States of America, by Zane David Memeger, United States Attorney for the District, and Eric B. Henson, Assistant United States Attorney, respectfully requests that the Court deny defendant Frank G. McAleese's motion to suppress in-court identifications for the reasons set forth below. The government does not intend to offer the out-of-court identifications in its case-in-chief, although in the circumstances here the government avers that the photographic identifications were not so unnecessarily suggestive as to give rise to any substantial likelihood of misidentification.

I. Introduction

The defendant Frank G. McAleese, a convicted murderer, is charged by indictment with three counts of providing false information to a federal firearms licensee, in violation of 18 U.S.C. § 922(a)(6); three counts of making a false statement to a federal firearms licensee, in violation of 18 U.S.C. § 924(a)(1); and four counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). These charges arise from McAleese's sales and purchases of handguns at a Philadelphia gun shop, transactions that are regulated under federal

law and records of which are required by law to be maintained by the gun shop. McAleese seeks suppression of his identification by store employees with whom he made these transactions. McAleese claims that the employees' identifications of him from photographs were unnecessarily suggestive and substantially likely to produce misidentifications because his photograph was not placed in an array with photographs of others.

The Court should deny the motion because the bases for the witnesses identification - McAleese's repeated unusual transactions and distinctive demeanor - rule out any substantial likelihood that they do not recognize him independently of the photographs they identified out of court.

II. <u>Argument</u>

A. <u>Factual Background</u>

At about 11:15 p.m. on November 9, 2011, McAleese, who was known as Frank MacLaine, brought the bloodied, lifeless body of Carole Brown to the Salem County, New Jersey Hospital where she was pronounced dead at about 11:25 p.m. from bludgeoning wounds to her head. New Jersey State Troopers went to the hospital where they found McAleese sitting in a wheelchair near the emergency room. McAleese claimed that he had followed Brown to a bar where, he claimed, she had gone to buy drugs. He stated that he found Brown, whom he identified as his girlfriend, slumped in the passenger seat of her car, and drove her to the hospital. McAleese's clothes and shoes were covered in blood, his hands were soaked in blood, and blood was spattered on his face and forehead. Brown's car belied McAleese's story and explained these blood spatters: in the passenger cabin were pools of blood, high velocity blood spatter,

brain matter, and bone fragments. McAleese was arrested during the night of November 9-10, 2011.

Based on the initial investigation, New Jersey State Police Detective II Dennis Quinn obtained from Judge Samuel D. Natal of the Superior Court, assigned to Salem County, a warrant to search both Brown's and McAleese's cell phones for incoming and outgoing telephone calls and contact lists, among other things. On McAleese's cell phone, Detective Harold McDermott found a reference to "Lock's," which he determined to be a Philadelphia gun shop. On March 7, 2012, Detective McDermott took a photograph of McAleese to the gun shop where employees advised the detective that they thought McAleese had been a customer of the store and may have purchased a gun there. Supplied by the detective with McAleese's identifying information, the owner recovered records of McAleese's gun transactions with the shop. The detective notified ATF of McAleese's firearms transactions.

On April 13, 2012, ATF Special Agent SarahJane Serafino interviewed the gun shop owners. Both declared that they recalled McAleese as a customer of the gun shop. They were then shown two photographs of McAleese, and each said that the second of the two photographs, which showed McAleese with darker hair, more closely resembled how McAleese looked as a customer. On April 14, 2012, Special Agent Serafino interviewed a sales associate of the gun shop who also recalled McAleese as a customer. He was shown the two photographs of McAleese and also identified the second as most resembling him as a customer. These witnesses variously recalled McAleese's unhappy demeanor, his multiple transactions, and his claim to have worked on a tugboat.

On May 3, 2012, Special Agent Serafino interviewed another salesperson for the gun shop. He did not remember McAleese as a customer but noted that a non-driver's license for McAleese attached to the paperwork for one of his transactions matched the photographs of McAleese shown him by the agent.

B. Legal Background

Eyewitness identification evidence is admissible if the procedures are not impermissibly suggestive or if the identification has independent reliability. See, e.g., Manson v. Brathwaite, 432 U.S. 98, 114 (1977); Neil v. Biggers, 409 U.S. 188, 199 (1972); see also United States v. Emanuele, 51 F.3d 1123, 1128 (3d Cir. 1995) ("A suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability, for reliability is the linchpin in determining the admissibility of identification testimony.") (internal quotation marks omitted). Courts employ a two-step analysis to determine the admissibility of identification testimony. First, the defendant must prove that the identification procedure was impermissibly suggestive. Biggers, 409 U.S. at 198-99. Whether an identification procedure was unnecessarily suggestive has been broken down into two component parts: "that concerning the suggestiveness of the identification, and that concerning whether there was some good reason for the failure to resort to less suggestive procedures." United States v. Stevens, 935 F.2d 1380, 1389 (3d Cir. 1991) (citations omitted).

Even single-photo identifications have been upheld. See, e.g., United States v. London, 39 Fed. Appx. 758, 759 (3d Cir. 2002) (not precedential); United States v. Flores, 149 F.3d 1272, 1279 (10th Cir. 1998). In Braithwaite, for example, an undercover police officer who had made a drug purchase from an individual unknown to him was later given a single photograph of a

suspect and identified that person as the seller. 432 U. S. at 101. The photo was supplied by a fellow officer, based upon a description of the seller provided by the undercover officer. Id. The photo was sent to the undercover officer's office and was viewed when he was alone and away from any outside influence or pressure. Id. The Court found that even if the procedure was impermissibly suggestive, the identification was sufficiently reliable to override any concerns about the identification process itself. Id. at 116. The Court concluded that under all the circumstances of the case, there was not "a substantial likelihood of misidentification," and stressed that short of that point, such evidence was for the jury to weigh. Id. at 117. Notably, while the Court suggested that identifications arising from single-photo displays may generally be viewed with suspicion, it noted that in the situation at hand, there was little pressure on the witness to acquiesce with any suggestion that the method may have presented. Id. at 116.

Thus, if the court determines that the identification procedure at issue was unnecessarily suggestive, it must then consider whether the procedure was so "conducive to . . . mistaken identification" or gave rise to such a "substantial likelihood of . . . misidentification" that admitting the identification would be a denial of due process. Stevens, 935 F.2d at 1389; Emanuele, 51 F.3d at 1128. If the identification can be shown to be reliable under the totality of the circumstances, then there is no due process violation even in the case of an unnecessarily suggestive procedure. Emanuele, 51 F.3d at 1128, citing Braithwaite, 432 U.S. at 106. In conducting this analysis, the courts consider the five factors enumerated by the Supreme Court in Biggers: the witness' original opportunity to observe the defendant; the degree of attention during that observation; the accuracy of the initial description; the witness' degree of certainty when

viewing the defendant or his image; and the length of time between the observation at the crime scene and the identification procedure. Biggers, 409 U.S. at 200-01.

   C. The Identifications are Independently Reliable.

As the defense notes, the Third Circuit has recognized that eyewitness identifications of strangers may be unreliable. See United States v. Brownlee, 454 F.3d 131, 141 (3d Cir. 2006), quoting Frankfurter, The Case of Sacco and Vanzetti: A Critical Analysis for Lawyers and Laymen (University Library ed. Grosset & Dunlap 1962 (reprinting 1927 ed.)).[1] It is the extraordinary case, however, in which a jury is denied the opportunity to evaluate proffered eyewitness identification testimony.[2] The jury should be permitted to evaluate these witnesses' identifications of McAleese.

Here, McAleese was no stranger to the witnesses but was their customer. It is a commonplace that merchants become adept at recognizing customers. During McAleese's transactions, the owners and sales associate had strong incentives to pay calm but close attention to him as someone to whom they wanted to sell merchandise and who might, as McAleese did, return to the business for additional sales or purchases. They did this in the context of a

---

[1] Roscoe Pound, the Dean of the Harvard Law School from which Frankfurter wrote his brilliant brief on the Sacco-Vanzetti case, exhaustively examined the evidence in the case and said, "Felix was completely wrong. . . . His humanitarian instincts had distorted his judgment." David Evanier, reviewing Francis Russell, Sacco and Vanzetti: The Case Resolved (Harper & Row 1986) in The American Spectator (August 1986) at 39.

[2] Juries are cautioned to receive identification testimony with caution and to scrutinize it with care only if the witness' opportunity to observe was impaired or if the witness' identification is not positive, was shaken on cross-examination, or was weakened by a prior failure to identify the defendant or by a prior inconsistent identification. Third Circuit Model Jury Instruction - Criminal, No. 4.15 (Dec 2012).

regulated business which is required to do identification and background checks on customers, procedures which drag out transactions and make it more likely that the salespeople will recognize past customers in the future. Here, of course, the emotional disturbances that pertain when a stranger commits a violent crime against a stranger are not present. This is not a case of emotionally vulnerable witnesses being overcome by a law enforcement procedure calculated to produce in the witnesses a desire to identify a suspect no matter what, or a false sense of confidence in their ability to remember someone it is unlikely they can, in fact, recall.

In light of these background facts, the decisions of the detective and agent to ask the witnesses whether they recognized the former customer, rather than show them a photo array, was reasonable and not calculated to produce feigned or imagined identifications. In fact, another salesperson, who waited on McAleese as shown by the records of one of McAleese's transactions, did not recognize him and said so, even though the salesperson could match McAleese's non-driver's identification, which was attached to the paperwork, to the photographs shown him. This confirms that in these circumstances the procedure was appropriate and not invidiously suggestive, much less conducive to irreparably mistaken identifications.

Analyzed under the <u>Biggers</u> factors, the witnesses' identifications are independent of the photographs and are reliable. The witnesses' original opportunities to observe the defendant were fulsome, and each witness' attention was concentrated on McAleese unhampered by distressing factors or impairment of their abilities to see and attend to him. Each remembers facts about her or his memory of McAleese that confirm the soundness of their identifications. Each is certain of her or his ability to recognize McAleese based on his visits to the gun shop and nothing else. Although substantial time passed before the identifications and the witnesses were

not called upon to give descriptions of their customer, all of the circumstances are to be considered together, and here they strongly favor admission of the identification testimony.

There is no reason to believe that the witnesses who profess to recognize McAleese were improperly induced to do so by seeing his photographs. Each witness has her or his reasons for remembering McAleese which are independent of the photographs. The Court should permit them to identify McAleese to the jury, subject to cross-examination and appropriate instructions on how the jury should evaluate their identifications.

III. CONCLUSION

The Court should deny defendant's motion to suppress the witnesses' in-court identifications.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

*Kathy A. Stark*
KATHY A. STARK
Chief, Violent Crime and Firearms Section

*Eric B. Henson*
ERIC B. HENSON
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on this day I caused a copy of the Government's Response to Defendant's Motion to Suppress Physical Evidence to be served by electronic filing to:

James J. McHugh, Jr., Esquire
Defender Association, Federal Division

ERIC B. HENSON
Assistant United States Attorney

Date: January 23, 2013