IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. 12-239-01 |
| FRANK G. McALEESE<br>a/k/a "Frank George McAleese"<br>a/k/a "Frank E. MacLaine"<br>a/k/a "Frank Eastwood MacLaine" | :<br><br><br>: |

**GOVERNMENT'S SECOND SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO DEFENDANT'S MOTIONS TO SUPPRESS**

The United States of America, by Zane David Memeger, United States Attorney for the District, and Eric B. Henson, Assistant United States Attorney, respectfully submits this memorandum on issues raised at the April 9, 2013 motions hearing. For these reasons and those set forth in the government's submissions and in argument, the government respectfully requests that the Court deny defendant Frank G. McAleese's motions to suppress physical evidence and identification evidence.

I. Introduction

At the conclusion of argument, the government and defense requested and the Court granted permission for additional briefing on top of the supplemental briefing submitted before argument. The government will first outline its reasons for contending that the search warrants at issue were supported by probable cause to search the defendant Frank G. McAleese's car and the cell phone seized in that search. Second, the government will give its reasons in opposition to McAleese's argument that if his challenges to the search warrants were accepted, the Court should exclude from evidence not only the photograph of McAleese, the cell phone and its record of McAleese's connection to Lock's Philadelphia Gun Exchange, and the owner's and

1

employees' out-of-court identifications of McAleese's photograph, but also the gun shop's records of McAleese's illegal transactions, which include records the gun shop is required by law to maintain and additional business records, and the owner's and employees' in-court identifications of McAleese. This contention must be rejected because McAleese has no cognizable Fourth Amendment interest in the transaction records, which are records of the gun shop, and because the in-court identifications are not based on the photograph seized from McAleese's car but on the witnesses' independent recollections of him as a customer. The Court should deny the motions because the New Jersey search warrants were valid and were obtained and executed in good faith, and therefore any defect in the warrants would not justify the extreme remedy of suppressing McAleese's cell phone and firearms transaction records, much less the gunshop's records and its employees' recollections of McAleese's firearms transactions.

II.   Argument

　　A. Probable Cause and Good Faith

This Court is asked to review the probable cause determinations and search warrants issued by two judges of the Superior Court of New Jersey. The Court does not review the judges' determinations of probable cause de novo; it exercises only a deferential review of these determinations. Illinois v. Gates, 462 U.S. at 236 ("A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' "); United States v. Whitner, 219 F.3d 289, 295-96 (3d Cir. 2000); United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993) (In evaluating a search warrant, the Court should "[k]eep[] in mind that the task of the issuing magistrate is simply to determine whether there is a fair probability that contraband or evidence of a crime will be found in a particular place" and "uphold the warrant as long as there is

substantial basis for a fair probability that evidence will be found."). The issue is whether the judges' had a "substantial basis" for concluding that probable cause existed for the warrant. Gates, 462 U.S. at 238; Whitner, 219 F.3d at 295-96. It must be remembered that "[t]he task of the issuing magistrate is to make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. Finally, "[t]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Id.

The warrant to search McAleese's car (Government's Exhibit 7) was based, among other things, on the evidence that the murder victim, who had been brutally beaten in her car, was last seen alive arguing with McAleese beside his and her cars. Her car, but not McAleese's, disappeared. This was because McAleese brought her to the hospital in her car. At the hospital McAleese falsely claimed that he found her after she was beaten. This claim was belied by, among other things, the condition of her car and blood spatter on his forehead. Given that information, there was a fair probability that a weapon or other evidence of the murder would be found in McAleese's car which was left exactly from where the victim departed from outside her residence and from this life. The details of McAleese's false exculpatory statement had, of course, to be investigated, but Judge Farrell, who issued the warrant, was not required to accept any part of the statement as true and to derail the murder investigation by doing so. It could be known with certainty that the victim was murdered in her car, that she had been arguing with McAleese before she disappeared in the car in which she was murdered, and that McAleese murdered her in the car. His claim that he walked to a bar where he found her need no more have

been accepted than his claim that she had been beaten before he found her. The incontrovertible evidence pointed to the assault having occurred within easy reach of McAleese's car. His attempt to divert attention to a supposed assault by an unknown person at a bar did not defeat that inference but made it stronger. McAleese's attempt to divert attention from himself, his car, and the argument outside the victim's residence was a strong reason to concentrate attention there. Ample probable cause to search McAleese's car for a weapon or other evidence of the murder justified Judge Farrell's decision to issue the warrant.

As the warrant to search McAleese's car was based, in part, on information that the murder may have been motivated by the fraught relationship of McAleese to the victim, the detective executing the warrant properly seized as evidence McAleese's cell phone and photograph. As evidence accumulated that the motive for the murder would be discovered in McAleese's relationship with the victim, Judge Natal properly found probable cause to search McAleese's phone. Government's Exhibit 8. Detective McDermott then properly seized from the phone McAleese's contact information, which included his contact with the gun shop where the transactions at issue occurred.

Even if the judges had erred in their probable cause determinations, the police who relied on those determinations did so in good faith. The Third Circuit has identified four narrow situations in which an officer's reliance on a warrant is not reasonable: (1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function; (3) when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or (4) when the warrant was so

facially deficient that it failed to particularize the place to be searched or the things to be seized. United States v. $92,427.57, 307 F.3d 137, 146 (3d Cir. 2002). To come within these exceptions, a movant "must show, not just that the Magistrate Judge erred in issuing the search warrant at issue, but that the Magistrate Judge's error was so obvious that a law enforcement officer, without legal training, should have realized, upon reading the warrant, that it was invalid and should thus have declined to execute it." Id. Clearly McAleese cannot show such glaring, egregious errors. The arguments against the warrant articulated by the defense are no more than that, arguable. The Court's questions about probable cause, which the government believes have been answered above and in the arguments previously made, were sufficiently difficult to discern that they had not previously been articulated by the defense. On this record, the Court may elect to simply apply the good faith exception, in accord with the Third Circuit's precedent permitting such an approach. See, e.g., $92,422.57, 307 F.3d at 145.

Even when, unlike here, a search is unreasonable in violation of the Fourth Amendment, suppression may be unwarranted in light of recent Supreme Court jurisprudence. In Herring v. United States, 555 U.S. 135 (2009), the Supreme Court emphasized that "[t]he fact that a Fourth Amendment violation occurred - i.e., that a search or arrest was unreasonable - does not necessarily mean that the exclusionary rule applies. Illinois v. Gates, 462 U.S. 213, 223 [] (1983). Indeed, exclusion 'has always been our last resort, not our first impulse,' and our precedents establish important principles that constrain application of the exclusionary rule." Id. at 140, citing Hudson v. Michigan, 547 U.S. 586, 591 (2006). See also Davis v. United States, 131 S. Ct. 2419, 2426-28 (2011) (expounding on Herring at length). The Herring Court continued: "the exclusionary rule is not an individual right and applies only where it 'result[s] in

appreciable deterrence.' We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation. Instead we have focused on the efficacy of the rule in deterring Fourth Amendment violations in the future." 555 U.S. at 141 (citations omitted). The Court concluded: "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.[1] As laid out in our cases, the

---

[1] Because of the mandate that a court consider the enormous cost of enforcement of the exclusionary rule, Herring explained, any application of the rule must result in "appreciable" and "significant" deterrence, not just "marginal" or "incremental" deterrence. Id. at 141-42 (citations omitted). The Court therefore concluded that only "flagrant" misconduct warrants suppression.

> The extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct. As we said in Leon, "an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus" of applying the exclusionary rule. 468 U.S., at 911 []. Similarly, in [Illinois v. ]Krull, [480 U.S. 340] (1987), we elaborated that "evidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" 480 U.S., at 348–349 [] (quoting United States v. Peltier, 422 U.S. 531, 542 [] (1975)).

Herring, 555 U.S. at 143. The Supreme Court concluded:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

Id. at 144. Stated differently, "our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances." Id. at 145, quoting Leon, 468 U.S. at 922 n.23.

In this case, the detective did not act flagrantly to violate the Constitution, and certainly without any knowledge that his conduct was wrongful in any way. His judgment was the same as two Superior Court judges. The benefits of applying the exclusionary rule in this situation, Herring held, cannot justify its cost.

exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Id. at 144.[2] Unless an officer acted deliberately, recklessly, or with gross negligence, suppression is impermissible. Were the defense arguments about the supposedly defective warrants persuasive, which they are not, exclusion of the evidence would not be warranted here.

B. Lack of Standing to Suppress the Gun Shop Records and the In-Court Identifications

McAleese seeks the suppression of evidence obtained from his car and cell phone, of so-called derivative evidence of McAleese's firearms transactions which was maintained as required by law by or in the business records of Lock's Philadelphia Gun Exchange, and of the in-court identifications of him by the owner and employees of Lock's. As to this evidence, "[t]he exclusionary rule enjoins the Government from benefitting from evidence it has unlawfully obtained; it does not reach backward to taint information that was in official hands prior to any illegality." United States v. Crews, 445 U.S. 463, 475 (1980). See also United States v. White, 326 F.3d 1135, 1140 (10th Cir. 2003). The records of the firearms transactions at issue were maintained before the search warrants at issue here were issued, that is, before the putative illegality. And McAleese may not suppress his identity. INS v. Lopez-Mendoza, 468 U.S. 1032 (1984); United States v. Garcia-Beltran, 443 F.3d 1126 (9th Cir. 2006); United States v. Roque-Villanueva, 175 F.3d 345 (5th Cir. 1999). Equally fundamentally, McAleese has no Fourth

---

[2] The Third Circuit has followed the teaching of Herring as follows, for example, "the exclusionary rule should only be applied when . . . police conduct is 'deliberate, reckless, or grossly negligent,' or when it will deter 'recurring or systemic negligence.'" United States v. Tracey, 597 F.3d 140, 151 (3d Cir. 2010) (quoting Herring v. United States, 555 U.S. 135, 144 (2009)). Because "isolated negligent acts on the part of the police do not warrant" letting "'guilty and possibly dangerous defendants go free,'" the exclusionary rule should not be applied in this case. Tracey, 597 F.3d at 151 (quoting Herring, 555 U.S. at 141).

7

Amendment privacy interest and thus no standing to suppress the firearms transactions and the owner's and employees' recollections of his dealings with the gun shop. See United States v. Stearn, 597 F.3d 540, 551, 553 (3d Cir. 2010) ("[T]he proponent of a motion to suppress bears the burden of proving not only that the search . . . was illegal, but also that he had a legitimate expectation of privacy in [the place searched]." (internal quotations omitted, second set of brackets in original) * * * to "ma[k]e the exclusionary remedy available to a defendant who [can]not . . . prove an expectation of privacy . . . [would be] . . . a fundamental error."). These transactions and the evidence McAleese left of them are simply beyond the protection of the exclusionary rule which is used to discipline egregious law enforcement invasions of legitimate expectations of privacy.

Even if the immediate fruits of the New Jersey searches were suppressible, which they are not, the evidence from the gun shop of McAleese's illegal firearms transactions and identity would not be suppressible. Here there was no arguably deliberate, reckless, or grossly negligent misconduct nor any recurring or systemic negligence that might warrant the extreme remedy of suppression of the information and evidence seized from McAleese's cell phone and home. Certainly nothing in the collection of this information could justify suppressing records of a federal firearms licensee and its employees' recollections of the transactions reflected in those records. The government has established, moreover, that these witnesses' in-court identifications of McAleese are based not on the photograph of him that was seized from his car or the non-driver license photographs of him but on the witnesses' independent recollections of his presence and transactions in the gun shop. The identifications are thus not derivative of any evidence potentially suppressible for a putative Fourth Amendment violation.

It would be anomalous to extend McAleese's Fourth Amendment rights to this evidence over which he has no privacy interest. The transactions in which he engaged were in no way private but perfectly public, some of them (the purchases if not the returns of firearms) were regulated by federal law, and the gun shop was required by law to maintain the records of these transactions and by good business practices to maintain the records of McAleese's sale or return of firearms. No deterrent purpose of the exclusionary rule could justify the suppression of this evidence. McAleese may not suppress these records. See Crews, 445 U.S. at 475; White, 326 F.3d at 1140. Nor may he suppress his identity. INS v. Lopez-Mendoza, 468 U.S. 1032 (1984); United States v. Garcia-Beltran, 443 F.3d 1126 (9th Cir. 2006); United States v. Roque-Villanueva, 175 F.3d 345 (5th Cir. 1999). The derivative evidence that is mentioned in the suppression motion is simply not suppressible.

III. CONCLUSION

The Court should deny defendant's motion to suppress physical evidence.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

KATHY A. STARK
Chief, Violent Crime and Firearms Section

ERIC B. HENSON
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I certify that on this day I caused a copy of the Government's Response to Defendant's Motion to Suppress Physical Evidence to be served by electronic filing to:

        James J. McHugh, Jr., Esquire
        Defender Association, Federal Division

        _____
        ERIC B. HENSON
        Assistant United States Attorney

Date: April 16, 2013